Horace D. McCOWAN, Jr. and Sarah E. McCowan, Plaintiffs,

v.

DEAN WITTER REYNOLDS, INC., Defendants.

Horace D. McCOWAN, Jr. and Sarah E. McCowan, Plaintiffs,

v.

SEARS, ROEBUCK AND CO., and Dean Witter Reynolds, Inc., Defendants.

Nos. 86 Civ. 8398 (RLC), 87 Civ. 2336 (RLC).

United States District Court, S.D. New York.

Dec. 21, 1987.

Thompson & McMullan, Richmond, Va., Charles W. Laughlin, of counsel, and Gadsby & Hannah, New York City, Harry H. Wise, III, of counsel, for plaintiffs.

Sage Gray Todd & Simms, New York City, John F.X. Peloso, Dorothy E. Hughes, of counsel, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs Horace D. McCowan, Jr. and Sarah E. McCowan brought suit against

Dean Witter Reynolds, Inc. ("Dean Witter"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the federal securities laws. Contending that plaintiffs have failed to state a claim and to plead fraud with the requisite particularity, Rules 12(b)(6) & 9(b), F.R.Civ.P., Dean Witter has moved to dismiss plaintiffs' claims arising under RICO, 18 U.S.C. § 1962(c); under section 10(b) of the Securities and Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b); and under sections 12(2) and 17(a) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. §§ 77*l* (2) & 77q(a). Dean Witter also moves to dismiss plaintiffs' claim under section 15(c)(1) of the 1934 Act, 15 U.S.C. § 78*o* (c)(1), on the ground that that provision does not give rise to a private right of action. In the alternative, Dean Witter moves to stay proceedings in this court pending arbitration.

In a separate action, transferred to this District from the Eastern District of Virginia and consolidated with their federal-law action against Dean Witter, the McCowans have brought suit in diversity against Sears, Roebuck & Co. ("Sears") and Dean Witter. The diversity complaint alleges "controlling person" liability against Sears pursuant to the law of Virginia, Va.Code Ann. § 13.1–522(2)(b) (1985). Plaintiffs' state-law claim arises from the same transactions which form the basis of the federal claims against Dean Witter. Sears seeks dismissal of this complaint pursuant to Rules 9(b) and 12(b)(6), F.R.Civ.P., or, in the alternative, a stay pending arbitration of the federal-law claims against Dean Witter.[1]

## DISCUSSION

On November 17, 1984, plaintiffs entered into a contract by which they opened a securities account with Dean Witter. The parties agreed that

[a]ny controversy between [Dean Witter] and the undersigned [plaintiffs] arising out of or relating to this contract or the breach thereof, shall be settled by arbi-

tration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect.

Aff't of Peloso, Ex. A, ¶ 16. On January 17, 1985, plaintiffs signed a one-paragraph document entitled "Customer's Agreement —Addendum," which stated:

Although you have signed a customer agreement form with Dean Witter Reynolds Inc. that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

Aff't of Peloso, Ex. B.

■ Plaintiffs resist arbitration, arguing that the "Addendum" they signed on January 17, 1985, served to modify the November 17, 1984 contract to the extent of exempting claims "aris[ing] under the federal securities laws" from arbitration. The text of the "Addendum," however, was prescribed by S.E.C. Rule 15c2–2(b). 17 C.F. R. § 240.15c2–2(b) (1987). That rule was promulgated to remedy the practice of including "misleading statement[s] of customers' rights under the federal securities laws" in customer agreement forms, statements such as that contained in paragraph 16 of the November 17 agreement. Exchange Act Release No. 20397, *reprinted in* Fed.Sec.L.Rep. (CCH) ¶ 83,452, at 86,357 (Nov. 18, 1983) (final rule). Disclosure pursuant to the rule "merely serves to guarantee that potential plaintiffs receive notice that an agreement to arbitrate does not override existing federal laws limiting the scope of possible litigation; it does not create, nor does it preserve rights to litigate in federal courts." *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1510 (S.D.N.Y.1985) (Edelstein, J.); *Shotto v. Laub*, 632 F.Supp. 516, 527

1. Dean Witter seeks dismissal of the diversity complaint on the same grounds as Sears, and on the additional ground that the complaint seeks no relief against it.

(D.Md.1986). Consequently, Dean Witter's provision of the required notice did "not act substantively to prevent arbitration of all federal securities claims." *Steinberg v. Illinois Co. Inc.,* 635 F.Supp. 615, 617 (N.D. Ill.1986), quoting *Shotto, supra,* 632 F.Supp. at 527.

■ A valid predispute agreement to arbitrate claims arising under RICO and the 1934 Act is enforceable. *Shearson/American Express, Inc. v. McMahon,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *see Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1244, 84 L.Ed. 2d 158 (1985) (White, J., concurring). In *McMahon,* the Court noted that *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (holding claims arising under the 1933 Act not arbitrable), rested on a "mistrust of arbitration" that is no longer warranted. *McMahon, supra,* 107 S.Ct. at 2341.

■ Despite this language, the *McMahon* Court did not go so far as to overrule *Wilko. Id.* at 2341 (*"stare decisis* may counsel against upsetting *Wilko* 's contrary conclusion under the Securities Act"); *Chang v. Lin,* 824 F.2d 219, 222 (2d Cir. 1987). Thus, while plaintiffs must arbitrate their claims arising under RICO and the 1934 Act, they are entitled to a judicial resolution of those which arise under the 1933 Act. *Wilko, supra.*

■ Plaintiffs invoke two provisions of the 1933 Act: section 12(2), 15 U.S.C. § 77*l* (2), and section 17(a), 15 U.S.C. § 77q(a). The section 12(2) claim appears to be premised upon confirmation slips that Dean Witter sent the plaintiffs in which Dean Witter allegedly misrepresented the market value of, and the existence of a resale market for, certain securities Dean Witter pur-chased for plaintiffs' account.[2] While a confirmation slip may constitute a "prospectus" within the meaning of the 1933 Act, 15 U.S.C. § 77b(10); *see Byrnes v. Faulkner, Dawkins & Sullivan,* 550 F.2d 1303, 1309–10 (2d Cir.1977), the complaint fails to allege compliance with section thirteen's statute of limitations. 15 U.S.C. § 77m.[3] Plaintiffs aver that the purchases of the shares at issue were made "[d]uring the months of February through October, 1985." Complaint, ¶ 7. The complaint was filed, however, on the last day of October, 1986, more than one year after plaintiffs would have received confirmation of most or all of the purchases. Since plaintiffs have failed to

> allege facts demonstrating not only when the fraud was discovered, but why "such discovery should not have been made by the exercise of reasonable diligence" at an earlier time,

*Homburger v. Venture Minerals, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 98,858 at 94,427 (S.D.N.Y.1982) (Haight, J.) (citation omitted), the claim under section 12(2) is deficiently pleaded. *See also Leone v. Advest, Inc.,* 624 F.Supp. 297, 303–304 (S.D.N.Y. 1985) (Carter, J.).

■ Plaintiffs' claim under section 17(a) rests in part on defendant's alleged delay in executing plaintiffs' order to sell certain securities in their account, and in part on allegedly fraudulent representations and omissions in the confirmation slips and in monthly account statements. Delay in executing a "sell" order is actionable where a broker-dealer has sold shares of the same stock for its own account during the interval of delay. *Opper v. Hancock Securities Corp.,* 367 F.2d 157, 158 (2d Cir.1966) (actionable under § 10(b) of

---

**2.** Insofar as it relates to defendant's alleged delay in executing plaintiffs' order to sell certain stocks in plaintiffs' account, the claim must be dismissed. Section 12(2) "only protects persons *buying* the securities specified in the ... prospectus." *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1095 (S.D.N.Y.1977) (Gagliardi, J.) (emphasis added), *aff'd,* 636 F.2d 1201 (2d Cir.1980).

**3.** Section thirteen provides:

> No action shall be maintained to enforce any liability created under section ... 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created ... under section 77*l*(2) of this title more than three years after the sale.

1934 Act)[4]; *see Barnett v. United States,* 319 F.2d 340, 344 (8th Cir.1963) (actionable under former 15 U.S.C. §§ 78*o* & 78*o* –3); 5B Jacobs, Litigation & Practice under Rule 10b–5, § 212.04 at 9–167 (1987). The element of fraud in such a case inheres in the broker's implied representation that it was impossible to sell the particular stock on the market with greater alacrity. *Barnett, supra,* 319 F.2d at 345. *Cf. Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir.1971); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563 (E.D.N.Y.1985) (delay in executing sale states no § 10(b) cause of action if not accompanied by broker's sale for own account). Plaintiffs allege that defendant continued to trade in and sell the stocks at issue for its own account while failing to liquidate them for plaintiffs' account, Complaint ¶ 12, and thus have stated a claim under section 17(a).

■ The section 17(a) claim must be dismissed, however, for failure to plead fraud with the requisite particularity. Rule 9(b), F.R.Civ.P. Rule 9(b) requires plaintiffs to

> identify the particular fraudulent statements (or omissions) [and] also "specify in what respects each of the statements were false and misleading and the factual basis for believing [the defendant] acted fraudulently...."

*Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 420 (S.D.N.Y.1978) (Haight, J.) (quoting *Gross v. Diversified Mortgage Investors,* 438 F.Supp. 190, 195 (S.D.N.Y. 1977) (Gagliardi, J.). Plaintiffs have pleaded the crucial allegation that defendant sold the stocks in question on its own account, but have done so only upon information and belief. On repleading, plaintiffs must specify the "factual basis" for that belief. *Todd, supra; Gross, supra.*

Insofar as plaintiffs' section 17(a) claim rests on confirmation slips and monthly statements in which defendant allegedly misrepresented the market value of certain shares it purchased for plaintiffs' account, the complaint is also insufficiently particular in alleging fraud. Plaintiffs have not even identified the documents which they contend were false; much less have they specified in what respect they were false, and the factual basis for believing them so.

Under Virginia's Securities Act, Va.Code Ann. §§ 13.1–501 through 13.1–527.3 (1985), modelled on the Uniform Act, 7B Unif.Laws Ann. 509–687 (1985), Sears' derivative liability as a "controlling person" requires a finding of primary liability on the part of Dean Witter. *See Ludwig v. Mutual Real Estate Investors,* 18 Wash. App. 33, 567 P.2d 658, 660–61 (1977) (construing Washington's Uniform Act), *disapproved on other grounds, Kittilson v. Ford,* 93 Wash.2d 223, 608 P.2d 264 (1980). The state-law complaint alleges that Dean Witter is liable under Va.Code Ann. § 13.1–502; section 502, in turn, is virtually identical[5] to section 17(a) of the federal Securities Act, 15 U.S.C. § 77q(a), from which it was derived. 7B Unif.Laws Ann. 516 (1985) (Comment). The court therefore defers decision on the motion to dismiss the state-law claim until such time as plaintiffs have repleaded their claim under section 17(a).

## CONCLUSION

For the reasons recited above, plaintiffs' claims under the 1934 Act and RICO are referred to arbitration, while plaintiffs' claims under the 1933 Act are dismissed with leave to replead. Plaintiffs' amended complaint shall be filed within thirty days

---

**4.** The elements of a cause of action under section 17(a) of the 1933 Act are identical to those under section 10(b) of the 1934 Act, except that section 10(b) prohibits fraud "in connection with the *purchase* or sale of any security," while section 17(a) pertains to fraud in "the *offer* or sale of any securities." *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225, 1231 n. 4 (S.D.N.Y. 1981) (Ward, J.), *citing In re Haven Industries, Inc.,* 462 F.Supp. 172, 181 n. 11 (S.D.N.Y.1978) (Gagliardi, J.)

**5.** The sole difference in language between the two lies in the inclusion in § 17(a) of the federal jurisdictional requirement that the fraud be perpetrated "by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails." 15 U.S.C. § 77q(a).

of the date of the filing of this opinion. The motions to dismiss the state-law complaint are deferred.

IT IS SO ORDERED.