848 F.2d 130
 Fed. Sec. L. Rep. P 93,785
Thomas R. LEICHT and Susan L. Leicht, Plaintiffs-Appellants,
v.
BATEMAN EICHLER, HILL RICHARDS, INCORPORATED, a Delaware
corporation, and Douglas Haydon, Defendants-Appellees.
 No. 87-6264.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1988.
Decided June 1, 1988.
As Amended on Denial of Rehearing Aug. 9, 1988.
 
 Larry F. Gitlin, Rapkin, Gitlin, Moser & Schwartz, Tarzana, Cal., for plaintiffs-appellants.
 Steven P. Rice, Kindel & Anderson, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before TANG, FLETCHER and PREGERSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The Leichts appeal the district court's decision dismissing their federal securities action and compelling arbitration pursuant to Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The Leichts argue that the district court erred in compelling arbitration because, unlike the parties in McMahon, the parties in this case did not contract to arbitrate federal securities disputes. We affirm in part, reverse and remand in part.
 
 
 2
 * Starting in 1982, Thomas Leicht and his daughter, Susan Leicht, opened a number of investment accounts with Douglas Haydon of the brokerage firm Bateman Eichler, Hill Richards, Inc. (BEHR). The Leichts entered into various customer agreements with BEHR regarding their brokerage accounts. Initially, each of these agreements contained a predispute arbitration provision providing, in pertinent part:
 
 
 3
 Any controversy between you and the undersigned arising out of or relating to my accounts with you or this agreement or any alleged breach thereof, shall be settled by arbitration.... I FULLY UNDERSTAND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT WITH YOU, I AM GIVING UP MY RIGHT TO LITIGATE SUCH CONTROVERSY IN A COURT OF LAW INCLUDING ANY RIGHT TO A JURY TRIAL.[1]
 
 
 4
 In November 1983, however, the Securities and Exchange Commission (SEC) issued Rule 15c2-2. See 17 C.F.R. Sec. 240.15c2-2 (1987). Rule 15c2-2 declared that broker agreements attempting to bind customers to arbitration of future disputes are "fraudulent, manipulative or deceptive act[s] or practice[s]...." Sec. 240.15c2-2(a). Allegedly in response to this rule, BEHR drafted new customer agreements. Although Susan Leicht apparently never entered into any new agreements with BEHR, Thomas Leicht signed three additional agreements, each containing the following modified arbitration provision:
 
 
 5
 Any controversy between you and the undersigned arising out of or relating to my account(s) with you or this Agreement, or any alleged breach thereof, shall be settled by arbitration.... THE UNDERSIGNED UNDERSTANDS THAT HE IS NOT REQUIRED TO ARBITRATE ANY DISPUTE OR CONTROVERSY THAT ARISES UNDER THE FEDERAL SECURITIES LAWS BUT INSTEAD CAN RESOLVE ANY SUCH DISPUTE OR CONTROVERSY THROUGH LITIGATION IN COURT.
 
 
 6
 Over a period of four years, the Leichts suffered heavy losses on their investment accounts with BEHR. On August 15, 1986, the Leichts filed a complaint alleging that BEHR had violated section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. Sec. 78j(b) (1982), and asserting various related state law claims.
 
 
 7
 Based on the arbitration clauses of their contracts, BEHR sought an order compelling the Leichts to submit their claims to arbitration and staying the litigation proceedings. On October 20, 1986, the trial court granted the motion to compel arbitration with respect to the state law claims and granted the motion to stay the proceedings. The district court found, however, that Ninth Circuit law prohibited arbitration of claims arising under section 10(b) of the Exchange Act. Accordingly, the court denied BEHR's motion to compel arbitration with respect to the section 10(b) claim.
 
 
 8
 After the district court's decision, the Supreme Court issued Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In McMahon, the Supreme Court held that agreements to arbitrate Exchange Act claims are enforceable in accordance with the Federal Arbitration Act, 9 U.S.C. Secs. 1-14 (1982). Id. 107 S.Ct. at 2337-43. On June 17, 1987, the district court, sua sponte, vacated the part of its previous order that stayed the plaintiffs' federal securities claim. In addition, it compelled arbitration of the federal securities claim, and dismissed the plaintiffs' action.
 
 
 9
 On July 28, 1987, the district court granted the Leichts' motion for reconsideration of its June 17, 1987 order. The court held that the arbitration clause in issue is "identical in nature despite the differences in semantics" to the clause in McMahon. Consequently, the court denied the plaintiffs' motion to vacate the June 17, 1987 order. The Leichts appeal the July 28, 1987 order denying their motion to vacate the court's June 17, 1987 order.
 
 II
 
 10
 We review de novo a district court's decision to compel arbitration. Zolezzi v. Dean Witter Reynolds, Inc., 789 F.2d 1447, 1449 (9th Cir.1986).
 
 
 11
 The district court held that Shearson/American Express, Inc. v. McMahon, --- U.S. ----, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), controls the disposition of this case. In McMahon, the respondents, Eugene and Julia McMahon, entered into two customer agreements with their brokerage firm, Shearson/American Express. The agreements contained explicit provisions providing for arbitration of all potential disputes arising out of their accounts "[u]nless unenforceable due to federal or state law." Id. 107 S.Ct. at 2335. The McMahons argued that the agreements to arbitrate Exchange Act claims constituted an impermissible waiver of their right to seek judicial relief. The Supreme Court disagreed. The Court held that agreements to arbitrate Exchange Act claims are enforceable in accordance with the terms of the Federal Arbitration Act, 9 U.S.C. Secs. 1-14. Id. at 2337-43.
 
 
 12
 Nevertheless, in McMahon, the Court was not presented with the threshold question of whether the parties actually had agreed to arbitration. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (when a court is asked to compel arbitration of a dispute, its first task is to determine whether the parties agreed to arbitrate that dispute). The broker-customer agreements clearly provided for arbitration of all disputes. The arbitration provisions stated, in relevant part:
 
 
 13
 Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration....
 
 
 14
 Id. 107 S.Ct. at 2335. Because there were no express limitations on the scope of the arbitration agreements, the issue of whether an agreement to arbitrate section 10(b) claims existed was not before the McMahon Court.
 
 
 15
 In this case, however, the crucial question is whether the Leichts agreed to arbitrate section 10(b) claims with BEHR. The district court never directly confronted this question. The court found that the Leichts' arbitration agreements are "identical in nature despite the difference in semantics" to the arbitration clauses before the Court in McMahon.[2] It then concluded that "[s]ince the United States Supreme Court held [in McMahon ] that the arbitration agreement was enforceable and therefore arbitration was properly compelled, then plaintiffs' claim is arbitrable and should be compelled to arbitration."
 
 
 16
 The current agreement between Susan Leicht and BEHR contains no language suggesting that Susan Leicht possesses a right to litigate federal securities claims. Therefore, the district court was correct in compelling Susan Leicht to submit her section 10(b) claim to arbitration pursuant to McMahon.
 
 
 17
 Thomas Leicht's new arbitration agreement with BEHR expressly notes, however, that "THE UNDERSIGNED UNDERSTANDS THAT HE IS NOT REQUIRED TO ARBITRATE ANY DISPUTE OR CONTROVERSY THAT ARISES UNDER THE FEDERAL SECURITIES LAWS BUT INSTEAD CAN RESOLVE ANY SUCH DISPUTE OR CONTROVERSY THROUGH LITIGATION IN THE COURTS." This language, absent in McMahon, appears to give Thomas Leicht a contractual right to litigate federal securities claims. Accordingly, we now address the threshold question of whether Thomas Leicht and BEHR agreed to arbitrate section 10(b) claims.
 
 III
 
 18
 Pursuant to the Federal Arbitration Act, federal law governs the arbitration of contracts "involving commerce." 9 U.S.C. Sec. 2; Bayma v. Smith Barney, Harris Upham & Co., 784 F.2d 1023, 1025 (9th Cir.1986). Once a court finds that the parties agreed to arbitrate, section 3 of the Arbitration Act requires that the court stay judicial proceedings until the matter has been arbitrated according to the terms of the arbitration agreement. 9 U.S.C. Sec. 3. Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Bayma, 784 F.2d at 1024 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)). BEHR contends that, in light of this presumption towards the arbitration of disputes, ambiguous customer agreements should be interpreted in favor of arbitration.
 
 
 19
 Here the clear language of the contract is sufficient to rebut the presumption of arbitration. The current agreement between Thomas Leicht and BEHR states that "THE UNDERSIGNED UNDERSTANDS THAT HE IS NOT REQUIRED TO ARBITRATE ANY DISPUTE OR CONTROVERSY THAT ARISES UNDER THE FEDERAL SECURITIES LAWS BUT INSTEAD CAN RESOLVE ANY SUCH DISPUTE OR CONTROVERSY THROUGH LITIGATION IN THE COURTS." This unequivocal language gives Thomas Leicht the option to resolve his federal securities disputes through litigation rather than arbitration. Absent any evidence that the parties intended otherwise, we should uphold the ordinary meaning of language in a contract. Cf. Jewell Companies v. Pay Less Drug Stores Northwest, 741 F.2d 1555, 1565 (9th Cir.1984) (the intent of the parties generally can be inferred from the face of an agreement).
 
 
 20
 BEHR argues that, despite the plain language of the contracts, their agreement does not give Thomas Leicht a right to litigate his Exchange Act claim. Rather, BEHR contends, the new clause is merely a disclaimer of liability in accordance with Rule 15c2-2.[3] BEHR cites a number of district court cases for the proposition that a Rule 15c2-2 waiver does not grant the customer a right to litigate federal securities claims.[4] See, e.g., Shotto v. Laub, 632 F.Supp. 516, 527 (D.Md. 1986); Finkle & Ross v. A.G. Becker Paribas, Inc., 622 F.Supp. 1505, 1510 (S.D.N.Y. 1985). Essentially, BEHR's argument is that the new language in the customer agreement should not be given effect because the parties never intended to provide an exception to their broad arbitration agreement covering all disputes.
 
 
 21
 We find this argument unpersuasive. Here the clear language of the contract declares that the parties expressly grant Thomas Leicht the contractual right to litigate federal securities actions. None of the cases cited by BEHR interprets a similar provision.[5]
 
 
 22
 In Shotto v. Laub, for example, the pertinent part of the arbitration clause notes that "nothing in this paragraph shall in any way constitute a waiver or limitation of any rights which the undersigned may have under any Federal Securities laws." 632 F.Supp. at 523; see also Finkle & Ross, 622 F.Supp. at 1507 ("I understand that I do not waive any rights I may have under the Federal securities laws for controversies arising under such laws") (emphasis added). The language in Shotto merely states that the agreement does not waive any rights that the customer may currently possess under the federal securities laws. It does not expressly provide, as in this case, that claims arising under the federal securities laws may be resolved through litigation.
 
 
 23
 Furthermore, at this stage of the proceedings, the district court must base its decision to compel arbitration solely on the pleadings and the language of the agreements. There is no evidence in the record to suggest that the parties intended anything other than to allow Thomas Leicht an opportunity to litigate his federal securities claims. Consequently, there is no basis in fact for the district court to find that the agreement, contrary to its plain language, should be interpreted as compelling arbitration of Thomas Leicht's section 10(b) claim.
 
 IV
 
 24
 The agreement between Thomas Leicht and BEHR explicitly states that Thomas Leicht possesses the right to litigate any claims arising under the federal securities laws. Susan Leicht's agreement does not contain any such contractual right. Accordingly, the district court properly compelled arbitration of Susan Leicht's federal securities claim but erred in compelling arbitration of Thomas Leicht's section 10(b) claim and in dismissing his suit.
 
 
 25
 AFFIRMED as to Susan Leicht, REVERSED as to Thomas Leicht, and REMANDED for further proceedings.
 
 
 
 [1]
 Thomas Leicht signed two such agreements dated August 20, 1982 and January 1, 1983. Although Susan Leicht signed an earlier agreement containing a different arbitration clause, her latest agreement with BEHR, dated September 24, 1983, contained the arbitration provision quoted above
 
 
 [2]
 Although the district court originally ruled that the new customer agreements cover one account of plaintiffs while the old agreements cover a separate account, the district court appeared to construe only the new customer agreements in compelling arbitration. Further, BEHR now admits that the old arbitration agreements are no longer effective ("the question here is not which of the two contracts controls. Rather, this court must interpret the admittedly controlling later contract"). Thus our decision is based only on the latest agreements between the Leichts and BEHR
 
 
 [3]
 Rule 15c2-2 states, in pertinent part:
 (a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.
 
 
 [17]
 C.F.R. Sec. 240.15c2-2(a) (1987)
 
 
 [4]
 In fact, in light of McMahon, the SEC recently determined that Rule 15c2-2 "is no longer appropriate or accurate," and thus rescinded the rule. Rescission of Rule Governing Use of Predispute Arbitration Clauses in Broker-Dealer Customer Agreements, 52 Fed. Reg. 39, 216-17 (Oct. 21, 1987)
 
 
 [5]
 BEHR cites to McCowan v. Dean Witter Reynolds, Inc., 682 F.Supp. 741 (S.D.N.Y.1987), which involves a provision virtually identical to that contained in Leicht's agreement with BEHR. We do not find the McCowan decision to be persuasive. Instead of following the clear meaning of the contractual provision before it, the court in McCowan unnecessarily relied on the legislative and judicial history in rule 15c2-2. See McCowan, 682 F.Supp. at 743