**VAN NESS TOWNHOUSES, Edward A. Shay; Ai O. Shay, et al., Plaintiffs–Appellants,**

v.

**MAR INDUSTRIES CORP., et al.; Shearson Lehman Brothers, Inc., Defendants–Appellees.**

No. 87–6710.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1988.

Decided Dec. 6, 1988.

As Amended Jan. 24, 1989.

Daniel Fogel and Robert M. Turner, Fogel, Feldman, Ostrov, Ringler & Klevens, Los Angeles, Cal., for plaintiffs-appellants.

Paul Waldau and Robert D. Feighner, Keesal, Young & Logan, Long Beach, Cal., for defendants-appellees.

Before FLETCHER, CANBY, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Van Ness Townhouses, Shay Trustees Edward A. Shay and Ai O. Shay, and Donald A. Haun ("the appellants") appeal the district court's order compelling them to arbitrate their federal securities claims and their civil RICO and pendent state law claims. We reverse.

## FACTS AND PROCEEDINGS

This action arises from real estate transactions in which the appellants agreed to sell condominium units or real property to Mar Industries Corp. ("Mar"). The appellants alleged that Shearson Lehman Bros., Inc. ("Shearson"—the appellants and Mar were Shearson customers) and Bruce M. Rose ("Rose"—a Shearson broker) had helped Mar to defraud the appellants. The appellants charged that Shearson and Rose agreed to transfer certain bonds as payment for the sales from Mar's account at

Shearson to the appellants' accounts, but that only a few of the bonds were actually transferred.

Each of the appellants, on opening an account at Shearson, entered into a standard form Customer Agreement that provided:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration.... *This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.*

(emphasis added). The record indicates that the last sentence of the form agreement was intended to comply with SEC Rule 15c2–2 which was in effect when the Agreement was signed and which provided:

> It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2 (1987). However, on June 8, 1987, the Supreme Court held in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), that claims brought under section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b–5 were arbitrable if the parties agreed to arbitrate those claims. On October 15, 1987, in response to the *McMahon* decision, the SEC rescinded Rule 15c2–2. Rescission of Rule Governing Use of Predispute Arbitration Clauses in Broker–Dealer Customer Agreements, Exchange Act Release No. 25034, [1987 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 84,163 (Oct. 15, 1987).

In June 1985, the appellants brought various federal securities, civil RICO, and pendent state law claims against the defend-ants seeking money damages, as well as rescission of and restitution for the securities transactions. Although Shearson answered the complaints and amended complaints, and moved to dismiss the action, it did not raise the issue of arbitration in any of its pleadings.

A pre-trial conference order providing for a jury trial was approved by the parties and executed by the district court in June 1987. The trial was originally set for May 1987, but was continued on the court's own motion to October 20. However, in July, Shearson filed a motion to compel arbitration. On October 19, the district court granted Shearson's motion. It later denied the appellants' motion for reconsideration. The appellants now appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. *Howard Elec. & Mech. Co. v. Frank Briscoe Co.*, 754 F.2d 847, 849 (9th Cir.1985).

## DISCUSSION

### 1. *District Court's Order Compelling Arbitration*

The appellants argue that the district court erred in compelling arbitration of their securities claims because they never agreed to arbitrate those claims. We agree.

■ When we are asked to compel arbitration of a dispute, our threshold inquiry is whether the parties agreed to arbitrate. *Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 132 (9th Cir.1988); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). When the parties agree to arbitrate their securities claims, those agreements are enforceable in accordance with the terms of the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. §§ 1–14 (1982). *McMahon*, 107 S.Ct. at 2337. Under the Arbitration Act, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at

3353 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)).

■ In determining whether the parties agreed to arbitrate a dispute, we ask: (1) whether an arbitration agreement applies to the particular dispute; and, if so, (2) whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. *See Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354; *Brotherhood of Teamsters, Local 70 v. Interstate Distr. Co.*, 832 F.2d 507, 509 (9th Cir.1987).

■ The last sentence of the customer agreement's arbitration provision expressly excludes claims arising "under certain of the federal securities laws." The Arbitration Act places arbitration agreements "upon the same footing as other contracts" and requires courts to "rigorously enforce" them. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 285 (9th Cir.1988). Thus, as with any contract, the parties' intentions control and "[n]othing ... prevents a party from excluding statutory claims from the scope of an agreement to arbitrate." *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354.

Here, Shearson admits that it inserted the language excluding certain securities claims from arbitration to comply with Rule 15c2–2 and that the parties signed an agreement that contained that language. This indicates that when the agreement was signed, the parties understood and intended that certain claims were not arbitrable.

However, it is unclear which of the "certain" securities laws, or claims arising thereunder, were meant to be nonarbitrable. We may therefore look to the circumstances surrounding the contract's execution to determine the parties' intent. *Laborers Health and Welfare Trust Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir.1983). While Shearson sets forth several arguments that the appellants' claims are arbitrable, extrinsic evidence indicates otherwise.

First, Shearson argues that because the agreement provides that it "does not apply [to claims] under *certain* of the federal securities laws" (emphasis supplied by Shearson), it only excludes arbitration of claims arising under the Securities Act of 1933. Specifically, Shearson asserts that because it was not until *McMahon* (in 1987) that the Supreme Court provided a definitive ruling on the arbitrability of claims under the 1934 Act, Rule 15c2–2 (in 1983) could not have been intended to exclude arbitration of claims, such as under section 10(b) and Rule 10b–5.

We find this argument is untenable because in rescinding Rule 15c2–2—after the *McMahon* decision—the SEC stated that:

In light of the fact that then existing case law generally held that predispute agreements to arbitrate claims arising under the *Securities Act of 1933 and the Securities Exchange Act of 1934* ... were void and unenforceable, the Commission determined that their inclusion in customer contracts without disclosure of their inapplicability to federal securities law claims was misleading, thus constituting a "fraudulent, manipulative or deceptive act or practice"....

Exchange Act Release No. 25034 (emphasis added). It cannot be doubted that Rule 15c2–2 was intended to prohibit predispute agreements to arbitrate securities claims under both the 1933 and 1934 Acts.

Second, Shearson argues that because of the policy favoring arbitration, doubts as to whether a claim is arbitrable are to be resolved in favor of arbitration. While this is a correct statement of the law (*see Mitsubishi*, 473 U.S. at 626, 105 S.Ct. at 3353), Shearson misstates its import. *McMahon* holds that arbitration agreements are to be rigorously enforced; however, an agreement must exist before it may be enforced. *See Leicht*, 848 F.2d at 132. Because the parties did not actually agree to arbitrate their securities claims, the policy favoring arbitration does not, by itself, support the district court's order compelling this matter to arbitration.

■ Third, Shearson argues that the exclusionary language in the arbitration

agreement is merely a notice provision to alert the parties that certain claims may or may not be arbitrable, and that arbitrability of a particular dispute is determined by the substantive law at the time of the hearing. See McCowan v. Dean Witter Reynolds, Inc., 682 F.Supp. 741, 743 (S.D.N.Y. 1987). This court recently rejected a similar argument in Leicht, 848 F.2d at 133–34. In Leicht, the defendant brokerage firm argued that similar exclusionary language in an arbitration agreement was merely a disclaimer of liability in accordance with Rule 15c2–2, but did not grant the plaintiff customer a right to litigate federal securities claims. Id. at 133. We found that the exclusionary language expressly granted the plaintiff a contractual right to litigate his securities claims. Id. Similarly, the provision in Shearson's agreement expressly excluded from arbitration those claims arising under the federal securities laws (both the 1933 and 1934 Acts). A fortiori, such an express exclusion from arbitration is an express grant of the right to litigate those claims.[1]

Because we conclude that the arbitration agreement does not apply to the appellants' securities claims, we need not decide whether legal constraints external to the parties' agreement foreclose arbitration of those claims.

2. *Shearson's Express or Implied Waiver of the Right to Compel Arbitration*

The appellants argue that Shearson expressly waived its right to compel arbitration unless all of the appellants' claims are arbitrable. In addition, they argue that Shearson implicitly waived its right to compel arbitration because it actively litigated this case for over two years before moving to compel arbitration."

"A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). However, waiver of the right to arbitration is disfavored because it is a contractual right, and thus "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir.1982)). The *Fisher* test applies to both express and implied waiver.

■ Here, the appellants' civil RICO and pendent state law claims are arbitrable as controversies "arising out of or relating to" their accounts with Shearson. However, appellants argue that Shearson waived its right to compel arbitration of all of the claims now because it did not seek to arbitrate the civil RICO and state claims previously. We agree.

Under the first prong of the *Fisher* test, we find that Shearson expressly waived arbitration of the civil RICO and pendent state law claims because it relinquished a known existing right to arbitrate those claims. Shearson argues that it did not seek arbitration of the appellants' securities claims until July of 1987 because before the *McMahon* decision (on June 8, 1987), it believed that Rule 15c2–2 precluded arbitration of those claims. Thus, because Shearson believed it could not arbitrate some of the claims, it chose not to arbitrate any of them.

However, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985), the Supreme Court held that district courts must grant motions to compel arbitration of pendent arbitrable claims, even if inefficient maintenance of separate proceedings in different forums might result. Thus, under *Byrd*,

---

1. In *Leicht,* the arbitration clause provided in relevant part:

    THE UNDERSIGNED UNDERSTANDS THAT HE IS NOT REQUIRED TO ARBITRATE ANY DISPUTE OR CONTROVERSY THAT ARISES UNDER THE FEDERAL SECURITIES LAWS BUT INSTEAD CAN RE-

SOLVE ANY SUCH DISPUTE OR CONTROVERSY THROUGH LITIGATION IN COURT. Although the exclusionary language used in the appellants' agreements differs from that used in *Leicht,* both arbitration exclusion provisions granted account holders the right to litigate claims arising under the federal securities laws.

Shearson had an existing right to compel arbitration of those claims. Nonetheless, Shearson chose to avoid severance of the arbitrable and non-arbitrable claims by failing to compel arbitration of the civil RICO and pendent state law claims.

 Moreover, Shearson's extended silence and much-delayed demand for arbitration indicates a "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims. This choice was inconsistent with the agreement to arbitrate those claims." *National Found. for Cancer Research v. A.G. Edwards & Sons,* 821 F.2d 772, 777 (D.C.Cir. 1987) (securities firm had waived right to arbitrate non-federal securities claims by participating in the litigation).

Under the second prong of the *Fisher* test, we find that Shearson implicitly waived arbitration of the civil RICO and pendent state law claims because Shearson acted inconsistently with its known existing right to arbitrate those claims. Under *Byrd,* if Shearson had moved to compel arbitration of those claims alone, the district court would have been required to grant that motion. 470 U.S. at 217, 105 S.Ct. at 1240. However, Shearson chose instead to litigate actively the entire matter —including pleadings, motions, and approving a pre-trial conference order—and did not move to compel arbitration until more than two years after the appellants brought the action.

We also find that Shearson implicitly waived arbitration under the third prong of the *Fisher* test because the appellants were prejudiced by Shearson's inconsistent acts. In *Fisher,* we held that even extensive discovery into both arbitrable and non-arbitrable claims before moving to compel arbitration is insufficient prejudice for a waiver if that discovery is available for trial of the non-arbitrable claim in federal district court. 791 F.2d at 697. However, the *Fisher* defendant failed to move to arbitrate its claims because such a motion would have been futile until the *Byrd* deci-

sion. *Id.* at 695. In contrast, Shearson did not move to arbitrate the civil RICO and pendent state law claims even though it had a right to do so under *Byrd.* Thus, the appellants relied to their detriment on Shearson's failure to move for arbitration of the arbitrable claims.

## CONCLUSION

The district court erred in granting Shearson's motion to compel arbitration because the parties never agreed to arbitrate those claims, and could not do so under the law existing at the time they signed the arbitration agreement. While we need not reach the issue of waiver of arbitration of the securities claims, we must conclude that Shearson waived arbitration of the civil RICO and pendent state law claims.

REVERSED.