**Robert M. STORER, Ultrafinance, Inc., Plaintiffs–Appellees,**

v.

**Tanfield C. MILLER, et al., Defendants,**

**Marvin Lerman, Shearson Lehman Brothers, Inc., Shearson Lehman Hutton, Inc., Defendants–Appellants.**

No. 89–3863.

United States Court of Appeals, Eleventh Circuit.

Oct. 10, 1990.

John Boykin, Daniel A. Hershman, Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, West Palm Beach, Fla., for Marvin Lerman, Shearson Lehman Bros., Shearson Lehman Hutton.

Jeffrey L. Friedman, Theodore A. Kerbsbach, New York City, for Shearson Lehman Hutton, Inc.

Jordan F. Camenker of Jordan F. Camenker, P.A., Orlando, Fla., for R.M. Storer & UltraFinance.

Before CLARK and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Shearson Lehman Hutton, Inc., Shearson Lehman Brothers, Inc. and Marvin Lerman (hereinafter referred to collectively as Shearson), appeal from an order of the district court for the Middle District of Florida denying their motion to require arbitration of a claim filed by appellee Storer, charging violation of Section 10(b) of the Securities Exchange Act of 1934.

## I. STATEMENT OF THE CASE

Storer filed a complaint in the Middle District of Florida against Shearson, a broker-dealer firm and its agent Lerman, seeking recovery of damages for the alleged violation of its obligation to Storer, an investor. The complaint contained 30 counts of which only one is of concern on this appeal. That is the count which alleged a violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 of the Securities and Exchange Commission. The court granted the motion to require arbitration of all of the other counts of the complaint, but denied the motion as to the § 10(b) count. The total loss alleged to have been suffered by the plaintiff exceeded $15,000,000.

The motion to require arbitration also requested a stay of the proceedings pending arbitration. The trial court denied both motions.

## II. STATEMENT OF FACTS

On September 28, 1984 and May 28, 1985, Storer signed "Customers Agreements" with Shearson. The 1985 agreement states:

Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration.... This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.

Both parties agree that the last sentence, excluding from arbitration "certain of the federal securities laws," was inserted in the Shearson standard Customer Agreement because of the adoption by the Securities and Exchange Commission of Rule 15c2–2(a). This Rule provides:

It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2(a) (1987) (rescission effective October 27, 1987, 52 Fed.Reg. 39,-216 (1987)). To comply with this Rule, the SEC required brokerage firms to include limiting language in the arbitration clause to provide notice to customers that they were entitled to bring any federal securities claim in a judicial forum.

The SEC adopted this Rule because of the decision by the United States Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that certain claims under the securities laws of the United States were not arbitra-ble. Rule 15c2–2 was rescinded by the Commission in 1987 after the Supreme Court in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), held that Section 10(b) claims were arbitrable.

## III. ISSUE

The only issue before us is whether there was a written agreement to arbitrate the § 10(b) claim.

## IV. DISCUSSION

Appellants rely primarily on their contention that the language of the Federal Arbitration Act, 9 U.S.C. § 2, as interpreted by the Supreme Court supports their contention that the trial court erred in refusing to order arbitration of the Section 10(b) dispute. The arbitration statute, in pertinent part provides as follows:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or at equity for the revocation of any contract.

9 U.S.C. § 2.

It thus becomes evident that if the parties hereto had a "written provision in a contract evidencing a transaction involving commerce by which they agreed to settle by arbitration any controversy thereafter arising out of such contract or transaction," the parties would be bound by such agreement.

We must, therefore, determine whether there was such a contract in existence at the time the broker's agreement was signed by the parties. It is clear from the language of the contract signed by Storer that the arbitration clause expressly stated that: "This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to any expressed or implied right of

action under certain of the Federal Securities laws."

Since, as discussed below, appellants may not contend that the Section 10(b) claim is not within the language "certain of the Federal Securities laws," we need only decide whether this exclusionary clause was a valid part of the arbitration agreement.

Appellants contend it was not a valid part of the agreement because it was made a part of the arbitration clause only because the regulations of the Security and Exchange Commission required it to be inserted as a notice to public customers, such as Storer, that they did not have to arbitrate such claims as that charged by Storer in his complaint.

A little background history of federal litigation under the Act may be helpful. In 1953, the Supreme Court decided in *Wilko v. Swan,* that the Act could not be enforced to require the arbitration of a dispute under Section 12(2) of the Securities Act of 1933. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Thereafter, when in May 1983, the Securities and Exchange Commission proposed Rule 15c2–2, it stated:

> Beginning with the Supreme Court's decision in *Wilko v. Swan,* 346 U.S. 427 [74 S.Ct. 182, 98 L.Ed. 168] (1953), courts have consistently held that broker-dealer agreements purporting to bind customers to arbitrate disputes arising in the future are void and unenforceable as applied to claims arising under *the Federal Securities laws.* Accordingly, investors entering into agreements containing such clauses with broker-dealers for the purchase or sale of securities can be deceived into believing that all their disputes with broker-dealers must be settled by arbitration....
>
> Paragraph (a) of the proposed rule embodies the general prohibition that broker-dealers customer agreements may not contain clauses that purport to bind customers to the arbitration of future disputes arising under *the Federal security laws.*

Fed.Sec.L.Rep. (CCH) at p. 85–967 (emphasis supplied). Moreover, this release referred to Federal Securities Exchange Act Release No. 15984 which had been published in 1979. In that release, the SEC stated:

> In *Wilko v. Swan,* 346 U.S. 427 [74 S.Ct. 182, 98 L.Ed. 168] (1953), the Supreme Court held that a pre-dispute arbitration clause was void and unenforceable as applied to a claim arising under the Federal Securities laws. ...
>
> In subsequent cases, courts have found the holding in *Wilko* to be applicable to causes of action arising under the Securities Exchange Act of 1934....

Fed.Sec.L.Rep. (CCH) at pp. 81, 976, 977.

■ Thus, it appears that Rule 15c2–2 was intended by the SEC to apply to all federal securities laws. It must, therefore, be presumed that when Shearson used Rule 15c2–2 as the basis for including the exclusionary language in the arbitration agreement, it intended for the clause to apply to Section 10(b) claims.

■ Appellants rely heavily upon their argument that the trial court "violated this Court's ruling in *Adrian* [*v. Smith Barney, Harris, Upham & Co., Inc.,* 841 F.2d 1059 (11th Cir.1988)], by allowing Storer to use Rule 15c2–2 as a defense to arbitration." Appellant thus places its reliance on the idea that Storer's defense to arbitration is based solely on Rule 15c2–2. The arbitration agreement in *Adrian* contained no language excluding from arbitration claims arising under federal securities laws as does the contract now before the Court. Storer relies not on the language of the rule but upon the contract language itself. In *Adrian,* this Court relied upon the decision of the Court of Appeals for the Fifth Circuit in *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 833 F.2d 545, 547–48 (5th Cir.1987), that the rescission of Rule 15c2–2 should be applied retroactively. Therefore, this Court merely held that the Rule itself could not be relied on as a defense to a claim for arbitration. Here, as noted above, the plaintiff relied not on the Rule but upon the agree-

ment of the parties that such claims need not be arbitrated.

Appellants bolster their argument on the universal recognition of the principle that agreements to arbitrate are to be construed liberally to favor arbitration. They rely particularly on *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in which the Supreme Court stated: "As a matter of federal law any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or on allegations of waiver, delay, or like defense to arbitrability." 460 U.S. at 24, 25, 103 S.Ct. at 941.

The Court also stated that the Act "creates a body of federal substantive law establishing and regulating the duty to honor an *agreement* to arbitrate." *Cone, supra,* 460 U.S. at 25, n. 32, 103 S.Ct. at 942, n. 32 (emphasis supplied).

■ Certainly no one can argue that this exclusionary language is subject to interpretation. It states plainly and unambiguously that certain of the federal securities laws need not be arbitrated. Since it is clear that the federal securities laws apply to the 1934 Securities Exchange law, as well as to the 1933 Act, there is no dispute about the coverage of the exclusionary language. The federal policy towards a very liberal construction of the arbitration Act certainly does not permit a court to ignore the precise language of an agreement.

We are impressed by the decision of the Court of Appeals for the Ninth Circuit in *Van Ness Town Houses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir.1988). In that case, the exclusionary language of the arbitration clause of the agreement was identical to that before this Court. There, the Court stated:

> ... Shearson argues that because of the policy favoring arbitration, doubts as to whether a claim is arbitrable are to be resolved in favor of arbitration. While this is a correct statement of the law (*see Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth,* ] 473 U.S. [614] at

627, 105 S.Ct. [3346] at 3353 [87 L.Ed.2d 444), (1985) ] Shearson misstates its import. *McMahon* holds that arbitration agreements are to be rigorously enforced; however, an agreement must exist before it may be enforced. *See Leicht [v. Bateman Eichler, Hill Richards, Inc.],* 848 F.2d [130] at 132 (9th Cir.1988). Because the parties did not actually agree to arbitrate their securities claims, the policy favoring arbitration does not, by itself, support the district court's order compelling this matter to arbitration.

*Van Ness Town Houses v. Mar Industries Corp.,* 862 F.2d 754, 757 (9th Cir.1988).

■ There was no public policy or other compelling reason for Shearson to enter into any broker-dealer contract with Storer at all. Certainly, there was no compelling reason for it to include in such a contract a requirement that *all* disputes be arbitrated. However, in order to carry on its business according to its own wishes, it required such an agreement in the broker-dealer contract. It is not beyond reason to conclude that once the Securities and Exchange Commission had issued Rule 15c2–2, the investing public, known as "public customers," might decide that thereafter they would deal only with broker-dealers who excluded a requirement to arbitrate § 10(b) claims. Shearson, of course, cannot say that an arbitration agreement excluding such claims from arbitration would in any way be illegal or contrary to public policy. In any event, Shearson elected to enter into this contract as it is written. Having done so, the Court should not fail to enforce it.

The judgment is therefore AFFIRMED.