**CATHOLIC DIOCESE OF BROWNSVILLE, TEXAS,**
Plaintiff–Appellee,

v.

**A.G. EDWARDS & SONS, INC., et al.,**
Defendants–Appellants.

No. 90–2084.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1990.

Bruce W. Collins, Richard A. Rohan, Lyman G. Hughes, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendants-appellants.

Robert B. Crotty, Robert Elkin, Steven H. Stodghill, Akin, Gump, Strauss, Haver & Feld, Ophelia S. Camina, Susman Godfrey, Dallas, Tex., David C. Garza, Garza & Garza, Brownsville, Tex., for plaintiff-appellee.

Before RUBIN, SMITH and BARKSDALE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

An arbitration agreement executed in 1985 between a broker and its customer excluded from compulsory arbitration causes of action arising under the federal

securities laws. The broker argues that the exclusionary clause was inserted under the compulsion of the Securities and Exchange Commission's now-rescinded Rule 15c2–2, which prohibited brokers from entering into contracts with customers that purported to compel arbitration of claims under the securities laws, and, therefore, should not be read as creating a substantive right to litigate. Because we find that the contract unambiguously evidences the parties' intent to exclude federal securities claims from the arbitration agreement, we affirm the district court's order denying arbitration.

## I

The Catholic Diocese of Brownsville, Texas, established three accounts with A.G. Edwards & Sons in 1983, executing Customer Agreements for each of the accounts and Option Account Agreements for two of the accounts. Each of the agreements contained an arbitration clause making "[a]ny controversy" between the parties subject to compulsory arbitration, with the following exception: "This Paragraph shall not apply to any controversy involving a non-spurious claim under federal securities laws." In March, 1985, the Diocese executed an Option Account Agreement for its third account. The arbitration clause in that agreement, set out in full in the margin,[1] by its terms superseded those in the earlier contracts, and provided, "[a]rbitration cannot be compelled with respect to disputes arising under the federal securities laws."

The Diocese brought suit against Edwards in April, 1987, alleging excessive and unsuitable trading in the Diocese's brokerage accounts in violation of both federal and Texas law. Edwards moved to compel arbitration of all of the Diocese's claims and to stay judicial proceedings pending the outcome of arbitration. The district court denied that motion with respect to the Diocese's federal securities claims. Edwards brought this interlocutory appeal pursuant to 9 U.S.C. § 15(a)(1) (1988).

## II

When the contract at issue here was executed in 1985, SEC Rule 15c2–2 prohibited brokers from entering into contracts that purported to bind their customers to arbitrate claims under the federal securities laws.[2] The rule reflected the SEC's belief, pursuant to the Supreme Court's decision in *Wilko v. Swan*,[3] that predispute agreements to arbitrate claims under either

---

1. *ANY CONTROVERSY BETWEEN MYSELF AND YOU OR ANY OF YOUR OFFICERS, DIRECTORS, AGENTS OR EMPLOYEES, ARISING OUT OF THIS AGREEMENT OR THE PERFORMANCE OR BREACH OF THIS AGREEMENT OR ANY ACCOUNT WITH YOU, OR ANY TRANSACTION BY ME WITH OR THROUGH YOU, OR ANY OTHER CAUSE WHATSOEVER, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE APPLICABLE STATE OR FEDERAL ARBITRATION STATUTES* and in accordance with the rules of the American Arbitration Association, the National Association of Securities Dealers, Inc., or such securities exchange as I may elect. If I fail to notify you of such election in writing within five (5) days after receipt from you of a request for arbitration, then you may make such election on my behalf. At least one of the arbitrators appointed to hear any controversy to be settled by arbitration shall be employed in the securities industry, unless otherwise agreed to prior to the time of arbitration. The award of any arbitrators appointed pursuant hereto shall be final and judgment upon the award rendered may be entered in any court having jurisdiction. The provisions of this paragraph do not apply to controversies involving commodity accounts or transactions in commodity futures contracts or options related thereto which are subject to the jurisdiction or [sic] the Commodity Futures Commission unless I agree to submit any such controversy to arbitration pursuant to this paragraph. Arbitration cannot be compelled with respect to disputes arising under the federal securities laws.

2. Rule 15c2–2 provided in part:

   (a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

   17 C.F.R. § 240.15c2–2(a) (1987).

3. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

the Securities Act of 1933 or the Securities Exchange Act of 1934 were unenforceable. The SEC was proved wrong by subsequent Supreme Court decisions that first limited [4] and then overruled [5] *Wilko.* As Rule 15c2–2 was no longer "appropriate or accurate," the SEC rescinded it.[6]

Edwards argues that we should not read the exclusionary clause as a substantive term of the contract, but as a simple notice provision inserted under the compulsion of Rule 15c2–2. Edwards also argues that, even if we do read the exclusionary clause as part of the agreement, it conveys to the Diocese no contractual right to litigate its securities claims. Edwards cites Professor Corbin for the proposition that, when a contract clause has been inserted under the compulsion of a governmental agency, that agency's intent should govern the courts' construction of the clause,[7] then cites a number of cases holding that Rule 15c2–2 is procedural and was not intended by the SEC to create a substantive right to litigate securities claims.[8]

Though this circuit has never addressed the issue, this is hardly the first time a broker has argued to the federal courts that a contract drafted and executed by the broker does not mean what it says plainly and unambiguously when it states that "[a]rbitration cannot be compelled with respect to disputes arising under the federal securities laws." Edwards concedes that the great weight of authority is against it, with the Third, Seventh, Ninth, Tenth and Eleventh Circuits having squarely decided that exclusionary clauses containing the same or similar language operated to exclude securities claims from arbitration.[9] Against this formidable array of opposing authority, Edwards offers only one Second Circuit decision—subsequently vacated by the Supreme Court—that disposes of the issue in a footnote with no discussion,[10] and two district court decisions.[11] We find the cases cited by Edwards unpersuasive, and agree with the majority position.

■ We review de novo the district court's decision not to compel arbitration.[12] Our first task when asked to compel arbitration is to determine whether the parties agreed to arbitrate the particular dispute before us.[13] While we resolve any doubts in construing the language of an agreement in favor of arbitrability,[14] the policy favoring arbitration embodied in the Federal Arbitration Act [15] cannot trump the ex-

**4.** *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

**5.** *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

**6.** 52 Fed.Reg. 39,216—17 (Oct. 21, 1987).

**7.** 3 A. Corbin, *A Comprehensive Treatise on the Working Rules of Contract Law* § 551 (1960).

**8.** *Bird v. Shearson Lehman/American Express, Inc.,* 871 F.2d 292, 295 n. 5 (2d Cir.), *vacated,* — U.S. —, 110 S.Ct. 225, 107 L.Ed.2d 177 (1989); *Steinberg v. Illinois Co.,* 635 F.Supp. 615, 617 (N.D. Ill.1986); *Shotto v. Laub,* 632 F.Supp. 516, 527 (D.Md.1986).

**9.** *Storer v. Miller,* 914 F.2d 215, 219 (11th Cir. 1990); *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1420–21 (11th Cir.1990); *Coffey v. Dean Witter Reynolds, Inc.,* 891 F.2d 261, 264–65 (10th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 43, 112 L.Ed.2d 20 (1990); *Ballay v. Legg Mason Wood Walker, Inc.,* 878 F.2d 729, 734 (3d Cir. 1989); *Gooding v. Shearson Lehman Bros., Inc.,*

878 F.2d 281, 283–84 (9th Cir.1989); *Van Ness Townhouses v. Mar Industries Corp.,* 862 F.2d 754, 757–58 (9th Cir.1988); *Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848 F.2d 130, 132–34 (9th Cir.1988); *Giles v. Blunt, Ellis & Loewi, Inc.,* 845 F.2d 131, 133–35 (7th Cir.1988).

**10.** *Bird,* 871 F.2d at 295 n. 5.

**11.** *Miazza v. A.G. Edwards & Sons, Inc.,* No. S88–0232(G) (S.D.Miss. April 17, 1989); *De Kuyper v. A.G. Edwards & Sons, Inc.,* 695 F.Supp. 1367 (D.Conn.1987). *See also Ottenritter v. Shearson Lehman Hutton, Inc.,* 727 F.Supp. 980 (D.Md.1989).

**12.** *E.g., Explo, Inc. v. Southern Natural Gas Co.,* 788 F.2d 1096, 1098 (5th Cir.1986).

**13.** *Mitsubishi Motors Corp. v. Soler Chrysler– Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).

**14.** *Id.*

**15.** *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

press agreement of the parties to exclude matters from arbitration.[16]

■ Whatever reason Edwards might have had for inserting the language into the contract, the contract expressly provides that "[a]rbitration cannot be compelled with respect to disputes arising under the federal securities laws." There is no indication on the face of the contract that the parties intended this language to serve merely a notice function. Indeed, the context in which the language is found suggests the opposite. The arbitration clause consists of three related, but nevertheless distinguishable, parts. The first broadly defines the scope of the arbitration agreement to include any controversy between the parties. The second section details the procedures for demanding and consummating arbitration. The final section lists the exclusions from the agreement: arbitration of specified disputes cannot be compelled unless Edwards agrees, and arbitration of securities claims cannot be compelled at all. Reading the arbitration clause as a whole, construing the final sentence to be a notice provision would be unreasonable.

Nothing in the circumstances surrounding the execution and performance of the contract dissuades us that the best evidence of the parties' intent is the language of the contract itself. When Edwards executed the agreement in 1985, it agreed to exclude from arbitration any future claims the Diocese might have against it under the federal securities laws. The fact that Edwards might have done so only because the law at the time prohibited mandatory arbitration does not relieve Edwards of its contractual obligation. Edwards did more than give notice of the existing law: it incorporated that law, without exception or qualification, into the contract. Rule 15c2–2 did not, contrary to Edwards' assertion, compel it to do so. Edwards might have drafted an explicit notice provision, or it might have drafted the exclusion so that it expired along with Rule 15c2–2 and *Wilko v. Swan*, as other brokers did.[17] Failing that, Edwards might have revoked its agreement with the Diocese after Rule 15c2–2 was rescinded—as Edwards was entitled to do upon written notice—and executed a new arbitration agreement that contained no exclusionary clause. Edwards did none of these things. In short, nothing in the record suggests that the parties ever manifested, in word or deed, an intention to submit to arbitration claims brought under the federal securities laws.[18] The record does establish, however, that the parties executed a contract that specifically excludes such claims from compulsory arbitration. Because we find no agreement to arbitrate the dispute before us, we cannot compel arbitration.

For the foregoing reasons, the order of the district court is AFFIRMED.

---

16. See *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989).

17. See *Karol v. Bear, Stearns & Co.*, 708 F.Supp. 199, 201 (N.D.Ill.1989) ("You understand that this Agreement does not constitute a waiver of your right to a judicial forum where such a waiver would be void under the Securities Laws and, specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.").

18. See *Storer v. Miller*, 914 F.2d 215, 219 (11th Cir.1990); *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 757 (9th Cir.1988).