J. Allan TORRENCE, Plaintiff,

v.

John R. MURPHY, III, Fran Finch Murphy, and Merrill Lynch, Pierce, Fenner & Smith, Inc., Defendants.

Civ. A. No. J91–0105(W).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 23, 1993.

Crymes G. Pittman, Dale Hubbard, Jackson, MS, for plaintiff.

Dale Danks, Jr., James L. Jones, Jackson, MS, for defendants.

## ORDER DENYING MOTION TO STAY AND COMPEL ARBITRATION AND MOTION OF COUNTERCLAIMANT FOR SUMMARY JUDGMENT

WINGATE, District Judge.

Removed from state court in Mississippi to this federal court pursuant to 28 U.S.C. § 1441 [1] on the grounds of federal question

---

1. Title 28 U.S.C. § 1441(a) states as follows:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the

jurisdiction, this lawsuit is between the plaintiff, an aggrieved investor in securities, and the defendants, plaintiff's brokerage house, accountant and account representative. Plaintiff alleges in his complaint that the defendants conspired to defraud the plaintiff in violation of various state and federal laws.

Having denied plaintiff's assertions in their answer, the defendants have taken the offensive and fired rounds at plaintiff's case aimed at terminating the dispute in this forum. Firstly, defendants Merrill Lynch, Pierce, Fenner & Smith (hereinafter "Merrill Lynch") and defendant Fran Finch Murphy pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*,[2] have moved the court to stay this lawsuit and to order the parties to arbitrate all of plaintiff's claims, the state law claims as well as the federal claims, as allegedly required by the Cash Management Account Agreement entered into by plaintiff and Merrill Lynch. Plaintiff's response is that while the Agreement includes an arbitration clause which embraces his state law claims, the Agreement does not obligate him to arbitrate his federal securities claims.

The core issue raised by defendants' motion is whether the plaintiff is obligated to arbitrate his federal securities claim under an arbitration provision negotiated at a time when the law forbade brokers from binding customers to arbitrate controversies arising under the federal security laws and where the arbitration provision itself mandates arbitration of federal claims "[e]xcept to the extent that controversies involving claims arising under the Federal Securities Law may be litigated."

In harmony with the wisdom espoused in *Blue Gray Corporations I and II v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 921 F.2d 267 (11th Cir.1991), this court holds that while this arbitration provision obligates plaintiff to submit his state law claims to arbitration, the arbitration provision does not require the plaintiff to arbitrate his federal securities claims before he may litigate same in federal court. The court's reasoning on these points is set out in Part II of this opinion.

The second motion which occupies the court's attention hails from defendant John R. Murphy, III, who, in his counterclaim against plaintiff, alleges abuse of process and violation of Title 11 U.S.C. §§ 362(a)(1)[3] and 524(a)(2)[4] of the United States Bankruptcy Code. In his motion for summary judgment

United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

Title 28 U.S.C. § 1441(b) states as follows:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

2. **§ 3. Stay of proceedings where issue therein referable to arbitration**

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one

of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

3. Title 11 U.S.C. § 362(a)(1) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, ..., operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

4. Title 11 U.S.C. § 524(a)(2) provides:

.(a) A discharge in a case under this title—
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover of offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

filed pursuant to Rule 56,[5] Federal Rules of Civil Procedure, defendant Murphy avers that he is an adjudicated bankrupt; that among the debts he discharged was a promissory note which listed plaintiff as a guarantor; that plaintiff filed this lawsuit after the discharge, seeking to recover nevertheless on the promissory note; and that, as such, plaintiff's disguised aim offends the bankruptcy code.

Plaintiff decries both this characterization of his lawsuit as well as plaintiff's reliance upon §§ 362(a)(1) and 524(a)(2). Plaintiff answers that any fair reading of his complaint clearly reveals that his lawsuit is not brought to collect the amount due on the promissory note. Instead, says plaintiff, it is a suit based upon breach of fiduciary duty and conspiracy to defraud. Moreover, says plaintiff, there is no personal right of action for a violation of 11 U.S.C. § 524(a)(2). Any such violation, says plaintiff, would be civil contempt of the bankruptcy court's order of discharge and would not be the basis for a private cause of action or a counterclaim in federal court. Persuaded that plaintiff's averments strike closer to the bull's eye, this court denies defendants' motion. The reasons undergirding the court's decision on these matters are found in Part III of this opinion.

## I.

### The Pertinent Facts

The plaintiff filed a complaint in the Chancery Court of Hinds County, Mississippi, wherein he asserted the claims of conspiracy to commit fraud, misrepresentation, breach of fiduciary duties, and the duty of good faith and fair dealing. The defendants, Merrill Lynch and Fran Finch Murphy, moved to stay the state court proceeding pursuant to the dictates of the Cash Management Agreement and to compel arbitration. Plaintiff then amended his state court complaint and additionally charged defendants with violations of Sections 12(a)[6] and 10(b)[7] of the Securities Exchange Act of 1934 and Sections 12(2)[8], 15(c),[9] and

5. Rule 56(a) and (b) of the Federal Rules of Civil Procedure provides:
   (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

   (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

6. Title 15 U.S.C. § 78l(a) provides as follows:
   (a) It shall be unlawful for any member, broker, or dealer to effect any transaction in any security (other than as an exempted security) on a national securities exchange unless a registration is effective as to such security for such exchange in accordance with the provisions of this chapter and the rules and regulations thereunder.

7. Title 15 U.S.C. § 78j(b) provides as follows:
   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

8. Title 15 U.S.C. § 77l(2) provides as follows:
   Any person who ...
   (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of this section), by the use of any means or instruments of transportation or communication and interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
   shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

9. Title 15 U.S.C. § 78o(c)(1) provides:
   (c)(1) No broker or dealer shall make use of the mails or any means or instrumentality of

17(a)[10] of the Securities Act of 1933. After the amended complaint was filed, Merrill Lynch and Fran Finch Murphy promptly removed this case to federal court under 28 U.S.C. § 1441.

Plaintiff's amended complaint contends that John R. Murphy, III, while acting as the plaintiff's accountant, induced plaintiff to loan money and execute loan guarantees in connection with certain business ventures. Fran Finch Murphy, a Merrill Lynch account representative, is accused of conspiring with John R. Murphy, III, to carry out fraudulent conduct in violation of the aforesaid securities laws and certain regulations imposed by the National Association of Securities Dealers and the Securities Exchange Commission in handling plaintiff's investment account. Merrill Lynch is charged with being the employer of stockbroker, Fran Finch Murphy, who, says plaintiff, at all times was acting within the course and scope of her employment with Merrill Lynch.

In 1985, when the parties initially came together, the plaintiff and defendant Merrill Lynch reduced their business relationship to writing in a Cash Management Account Agreement. This Agreement contains the following arbitration provision:

> Except to the extent that controversies involving claims arising under the Federal Securities Laws may be litigated, I agree that any controversy arising out of your business or this Agreement shall be submitted to arbitration conducted according

to the rules and procedures of the New York Stock Exchange, Inc. ("NYSE") or of the National Association of Securities Dealers, Inc. ("NASD") as I may elect. . . .

Defendants, Merrill Lynch and Fran Finch Murphy, contend that this provision requires the plaintiff to submit his claims to arbitration in accordance with 9 U.S.C. § 1, *et seq.*, particularly Section 2 of the Act which provides in pertinent part:

> . . . the Act will apply, "where there is [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . ."

According to the defendants, it is abundantly clear from the language of the provision that all of the plaintiff's claims, both the plaintiff's state law and federal security claims must be submitted to arbitration.

Relative to the clause begun by the word "except" in the arbitration provision of the Cash Management Account Agreement, defendants say that this language merely referred to the state of the law of arbitration at the time the Cash Management Account was executed in 1985. The law at that time held that federal securities claims arising under the Securities Act of 1933 were not arbitrable. *See Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Sawyer v. Raymond, James & Associates, Inc.,* 642 F.2d 791 (5th Cir.1981). Defendants then point out that pursuant to this case law the Securities Exchange Commission in Decem-

---

interstate commerce to effect any transaction in or to induce or attempt to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange of which it is a member by means of any manipulative, deceptive, or other fraudulent device or contrivance, and no municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall, for the purposes of this paragraph, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent.

10. Title 15 U.S.C. § 77q(a) provides as follows:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

ber of 1983 promulgated Rule 15c2–2 which provided in relevant part that:

> (a) [I]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the federal securities laws, ...

Accordingly, says defendant Merrill Lynch, thereafter it began incorporating into its arbitration provisions certain "notice clauses" such as the one before the court *sub judice* which reads, "*Except to the extent that controversies involving claims arising under the Federal Securities Laws may be litigated,*" in order to inform its customers that the courts had held that federal securities claims were not subject to binding arbitration.

Later, in the case of *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), upon addressing the arbitrability of claims arising under the Securities Exchange Act of 1934, the United States Supreme Court cast doubt upon the continued viability of *Wilko v. Swan, supra.* The Supreme Court in *McMahon* found that customer claims against a broker were arbitrable pursuant to the parties' predispute arbitration agreement and that the Securities Exchange Commission had sufficient statutory authority to ensure that arbitration was adequate to vindicate the customers' rights. *Id.,* 482 U.S. at page 236, 107 S.Ct. at page 2343. Recognizing the implications cast by McMahon upon the arbitrability of 1933 Act claims, the Securities Exchange Commission rescinded Rule 15c2–2 in October of 1987.

Inasmuch as Rule 15c2–2 has been rescinded and inasmuch as since 1987 the United States Supreme Court now has expressly overruled *Wilko v. Swan, supra,* in *Rodriguez De Quijas v. Shearson/American Exp. Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989), the defendants point out that there is no longer a federal prohibition against agreements to arbitrate federal securities claims. Therefore, say the defendants, the exclusion clause at issue should be viewed not as any bar to the arbitration of federal security claims, but merely as a no-tice provision which has lost its purpose in light of the rescission of Rule 15c2–2.

Plaintiff disputes none of the factual assertions made by the defendants in support of their motion to stay and compel arbitration. He agrees that the law changed and that federal securities matters now may be arbitrated. However, plaintiff disputes defendants' view of the clause in question as a notice provision; plaintiff reads it as a blanket exclusion of securities claims from arbitration. Moreover, plaintiff says that he agreed to the arbitration provision at a time when he could not be forced to arbitrate those claims and he has never waived or contracted away this right.

## II.

### A. The Matter of Arbitrability of the Federal Securities Claims

The Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements...." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Under the Act, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The courts answer this question by examining the various arbitration clauses before them to discern whether on their faces the arbitration clauses appear broad enough to encompass the parties' claims. Whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the courts should decide in favor of arbitration. Arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue. *See Neal v. Hardee's Food Systems, Inc.,* 918 F.2d 34, 37 (5th Cir.1990); *Mar–Len of Louisiana, Inc. v. Parsons–Gilbane,* 773 F.2d 633, 635–36 (5th Cir.1985), and the authority therein cited. This is so because the law favors arbitration agreements and interprets them under a pre-

sumption of arbitrability. However, notwithstanding the presumption of arbitrability, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Neal v. Hardee's Food Systems, Inc., supra*, at page 37; *Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir.1989). The policy favoring arbitration embodied in the Federal Arbitration Act cannot trump the express agreement of the parties to exclude matters from arbitration. *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *Catholic Diocese v. A.G. Edwards & Sons, Inc.*, 919 F.2d 1054, 1056–57 (5th Cir.1990). While the Federal Arbitration Act leaves no place for discretion by a district court and directs instead that district courts shall require parties to proceed to arbitration, any ordered arbitration should encompass only those issues as to which an arbitration agreement has been signed. The purpose of the Act is not to promote expeditious resolution of claims, but to ensure enforcement of privately made agreements to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

The defendants, Merrill Lynch and Fran Finch Murphy, rely upon the case of *Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 924 F.2d 550 (4th Cir.1991), in support of their argument that the exclusion clause in the arbitration provision of the Cash Management Account Agreement was nothing more than a notice provision. *Clark* dealt with three arbitration provisions found in Merrill Lynch account agreements. The first, which was included in agreements drafted before 1985 and before Rule 15c2–2, provides that "any controversy" would be submitted to arbitration. The second arbitration provision included the same exclusion language as found in the case *sub judice*. The third arbitration provision stated that a customer was, "not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts." The Fourth Circuit concluded that the litigation language found in the second arbitration provision was merely a notice provision which did not create a substantive right to litigate federal securities claims. The Court reached its conclusion after comparing all of the arbitration provisions and after determining that the litigation language in the second of the three was promulgated in response to Rule 15c2–2. As such, reasoned the Fourth Circuit, it was nothing more than a notice provision since the first arbitration provision provided that all disputes would be arbitrated and there was no evidence that the *Clark* plaintiff bargained to modify that agreement. *Clark v. Merrill Lynch, supra*, at page 556.

Contrary to the *Clark* decision is the case of *Blue Gray Corporations I & II v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 921 F.2d 267 (11th Cir.1991). The Eleventh Circuit also was faced with the identical arbitration provision under consideration in the case *sub judice*. [11] The Eleventh Circuit first recognized that the Federal Arbitration Act is "a congressional declaration of a liberal federal policy favoring arbitration agreements. *Id.* at page 269, citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra.* Notwithstanding this liberal federal policy, the Court also recognized that arbitration agreements are creatures of contract. So, said the Court, parties to a contract will not be required to arbitrate when they have not agreed to do so. Moreover, parties who agree to arbitrate are not prevented from excluding certain claims from the scope of their arbitration agreement.

Upon addressing the arbitration provision here at issue, the Eleventh Circuit concluded that the clause, "[e]xcept to the extent that controversies involving claims arising under the Federal securities laws may be litigated,"

---

11. In *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 833 F.2d 545 (5th Cir.1987), the Fifth Circuit Court of Appeals had before it the identical arbitration provisions involved in the case *sub judice*. However, since the precise issue *sub judice* had not been briefed by the parties, the Fifth Circuit passed on the question and remanded that case to the district court.

clearly excluded federal securities claims from arbitration. In reaching its conclusion, the Eleventh Circuit relied upon its previous holding allowing arbitration of federal security claims in *Goldberg v. Bear, Stearns & Company, Inc.,*[12] 912 F.2d 1418, 1419 (11th Cir.1990), and quoted this passage from *Volt Information Sciences, Inc. v. Board of Trustees, supra,* 489 U.S. at 478, 109 S.Ct. at 1255:

> [t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties. The Federal Arbitration Act (FAA) "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."

921 F.2d at 269.

The Court then cited *Prima Paint Corporation v. Flood & Conklin Manufacturing Company,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967), for the principle that the Federal Arbitration Act was designed "to make arbitration agreements as enforceable as other contracts, but not more so."

> We believe however, that regardless of whether Rule 15c2–2 itself granted any substantive right, the "parties are bound by what they agreed to do, not by what they would have agreed to do if the law [15c2–2] had been different at the time." [citation omitted] The terms of the contract, if clear, should be enforced.

> The arbitration clause in this case did more than merely notify the plaintiff of the existing state of the law; it expressed the agreement between the parties. [citation omitted] The parties agreed to arbitrate controversies "[e]xcept to the extent that controversies involving claims arising under Federal securities laws may be litigated." The district court found the plain meaning of the clause to provide plaintiff

with the option to bring federal securities claims in court.

*Blue Gray Corporations I & II v. Merrill Lynch, supra,* at page 270–71.

This court is persuaded by the reasoning of the Eleventh Circuit. The exclusion clause here at issue unambiguously provides an exception to any agreement to arbitrate all claims arising between the parties. According to the clear language of the agreement, while state law claims are to be arbitrated, federal securities law claims are excluded from any such requirement.

In reaching its conclusion, this court additionally has considered the Fifth Circuit's opinion in *Catholic Diocese v. A.G. Edwards & Sons, Inc.,* 919 F.2d 1054 (5th Cir.1990). As in the case *sub judice,* the defendant in *Catholic Diocese* argued that language in its arbitration agreement excluding disputes arising under the federal securities laws was not a substantive term of the contract, but merely a simple notice provision inserted under the compulsion of Rule 15c2–2. The A.G. Edwards arbitration agreement provided in pertinent part:

> Any controversy between myself and you ... arising out of this agreement or the performance or breach of this agreement or any account with you, or any transaction by me with or through you, or any other cause whatsoever, shall be settled by arbitration in accordance with the applicable state or federal arbitration statutes ... *Arbitration cannot be compelled with respect to disputes arising under the federal securities laws.*

The Fifth Circuit responded to the defendant's argument as follows:

> Though this circuit has never addressed this issue, this is hardly the first time a broker has argued to the federal courts that a contract drafted and executed by the broker does not mean what it says

---

12. The arbitration provision in *Goldberg v. Bear, Stearns & Company, Inc.,* provided as follows:
Any controversy arising out of or relating to your account in connection with transactions between us or pursuant to this Agreement or the breach thereof shall be settled by arbitration.... You understand that this Agreement

to arbitrate does not constitute waiver of your right to a judicial forum where such waiver would be void under the securities laws and specifically does not prohibit you from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction.

plainly and unambiguously when it states that "[a]rbitration cannot be compelled with respect to disputes arising under the federal securities laws." Edwards concedes that the great weight of authority is against it, with the Third, Seventh, Ninth, Tenth and Eleventh Circuits having squarely decided that exclusionary clauses *containing the same or similar language* operated to exclude securities claims from arbitration.

*Catholic Diocese v. A.G. Edwards & Sons, Inc., supra,* at page 1056. The Fifth Circuit cited several cases in support of its holding, including *Storer v. Miller,* 914 F.2d 215, 219 (11th Cir.1990); *Goldberg v. Bear, Stearns & Company, supra,* at pages 1420–21; *Coffey v. Dean Witter Reynolds, Inc.,* 891 F.2d 261, 264–65 (10th Cir.1989), *cert. denied,* 498 U.S. 810, 111 S.Ct. 43, 112 L.Ed.2d 20 (1990); *Ballay v. Legg Mason Wood Walker, Inc.,* 878 F.2d 729, 734 (3rd Cir.1989); *Gooding v. Shearson Lehman Bros. Inc.,* 878 F.2d 281, 283–84 (9th Cir.1989); *Van Ness Townhouses v. Mar Industries Corporation,* 862 F.2d 754, 757–58 (9th Cir.1988); *Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848 F.2d 130, 132–34 (9th Cir.1988); and *Giles v. Blunt, Ellis & Loewi, Inc.,* 845 F.2d 131, 133–35 (7th Cir.1988).

In *Storer v. Miller,* an action brought by an investor against a broker under Securities Exchange Act and Rule 10b–5, the Eleventh Circuit considered an arbitration clause which stated that, "[t]his agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist . . . under certain of the federal securities laws." The broker claimed that it had inserted the exclusionary language only in response to the later rescinded SEC rule which prevented brokers from requiring arbitration of such claims. Nevertheless, affirming the district court's order denying the broker's motion to require arbitration, the Court ruled that "[t]he federal policy towards a very liberal construction of the arbitration Act does not permit a court to ignore the precise language of an agreement." *Storer* cites with approval *Van Ness Townhouses v. Mar Industries Corporation, supra,* and *Leicht v. Bateman Eichler, Hill Richards, Inc., supra.*

In *Ballay v. Legg Mason Wood Walker, Inc.,* the Third Circuit examined an agreement containing the following phrase:

> However, I am aware that this arbitration provision is not binding upon me in any dispute or controversy that arises under the federal securities laws, and, in such cases, I may seek resolution through litigation in the courts.

The Court viewed the agreement in question as "an agreement providing that disputes arising 'under the securities laws' need not be arbitrated but could be litigated in the courts." Commenting that there was a question of considerable current interest whether a federal court could refuse to compel arbitration where a customer and broker have entered into an agreement of this type, the Court concluded that the clause excluded federal securities claims from arbitration and upheld the district court's denial of the defendants motion to stay and compel arbitration, relying on *Volt Information Sciences, Inc. v. Board of Trustees, supra,* 489 U.S. at page 477, 109 S.Ct. at page 1255. Moreover, the Court rejected Legg Mason's argument that the clause providing for litigation of federal securities law claims was not bargained for but merely added to comply with Rule 15c2–2.

The *Ballay* Court also rejected as unsound those district court decisions offered by Legg Mason in support of the contention that the clause was merely notice to the customer and that an arbitration clause did not override existing federal law. *See Finkle & Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505 (S.D.N.Y.1985), and *McCowan v. Dean Witter Reynolds, Inc.,* 682 F.Supp. 741 (S.D.N.Y. 1987).

In the case of *Gooding v. Shearson Lehman Bros., Inc.,* 878 F.2d 281, 282–84 (9th Cir.1989), the Ninth Circuit found itself tasked with interpreting the scope of an arbitration agreement similar to that *sub judice.* The clause in contention read as follows:

> . . . Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or

the breach thereof, shall be settled by arbitration.

Defendant, therein, Shearson Lehman, too contended that the clause was placed in the agreement only because of Rule 15c2–2 and thus was not a blanket exclusion of federal securities claims from arbitration. The Ninth Circuit disagreed, noting that it had dealt with a similar clause in the case of *Van Ness Townhouses v. Mar Industries Corporation*, 862 F.2d 754, 757–58 (9th Cir.1988), which provided:

> Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration.... This agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to an expressed or implied right of action under certain of the federal securities laws.

The Court in *Van Ness Townhouses* determined this language to be ambiguous in regard to which federal securities claims could be litigated and concluded that all could be.

The *Gooding* Court then applied the approach taken by *Van Ness Townhouses*— that of seeking to ascertain the intent of the parties—to the arbitration clause before it. Finding no evidence in the record that the parties did not intend to be bound by the exclusionary provision in the arbitration clause and adamant that both parties must abide by the terms of the contract, the *Gooding* Court found that Shearson had agreed that Gooding did not have to submit his federal securities claims to arbitration. *Gooding*, 878 F.2d at 284.

In *Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131, 133–35 (7th Cir.1988), the Seventh Circuit addressed an arbitration clause which provided:

> ... If any controversy arises between us in connection with my accounts it *may* be settled by arbitration.... I understand that my entering this agreement bars me from pursuing any claims not arising under the federal securities laws in court, *but does not bar me from pursing such claims based solely on alleged violations of the federal securities laws in a judicial forum* rather than in arbitration.

The Seventh Circuit agreed with the plaintiff that the arbitration agreement barred her from litigating any claim which did not arise under the federal securities laws and permitted her to pursue her federal securities claims in federal court. Therefore, the Court concluded from the language of the agreement that separable claims had been granted. The matter of Rule 15c2–2 was not addressed.

■ The weight of the authorities and the clear agreement of the parties thus persuade this court that the exclusionary language in question, "[e]xcept to the extent that controversies involving claims arising under the Federal securities laws may be litigated," plainly reserves to plaintiff the substantive right to litigate the plaintiff's federal securities law claims in federal court. While federal policy favors arbitration, this court's mission is not to misconstrue the parties' contractual intentions so as to further that policy. Rather, on the matter of arbitration, the court is bound by the expressed agreement of the parties. *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The thrust of the agreement here between the parties appear unmistakable— all claims, except federal securities claims, are arbitrable. The exception embracing federal securities claims is more than a notice provision; it was a substantive aspect of the contract. Therefore, this court will not direct the parties to submit these federal securities claims to arbitration.

## B. The Plaintiff's State Law Claims

Now that the court has declined to compel the parties to arbitrate the federal securities claims, the question arises as to the fate of the state law claims—should they proceed to arbitration in accordance with the parties' agreement, or should arbitration be stayed pending court litigation of plaintiff's federal securities claims. Resolution of this issue requires a review of the now-defunct "doctrine of intertwining." Under this doctrine, "[w]hen arbitrable and non-arbitrable claims

arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court, under this view, may in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal court." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 215, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). This doctrine of "intertwining" was viewed by some Circuits as a narrow exception to the pro arbitration policy of the Federal Arbitration Act. *See Commerce Park at DFW Freeport v. Mardian Construction Company,* 729 F.2d 334 (5th Cir.1984). In *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 785 F.2d 1274, 1279 (5th Cir. 1986), the Fifth Circuit explained the purposes underlying the doctrine:

> First, it "preserve[d the federal court's] exclusive jurisdiction over ... Federal Securities Act claims." (citation omitted). Those circuits adhering to the doctrine, including the Fifth Circuit, feared that an arbitrator making a decision on the arbitrable non-securities claims would be impelled to review the facts underlying the inextricably linked securities law claims. "[A]rbitration of an 'intertwined' state claim might precede the federal [securities] proceeding and the factfinding done by the arbitrator might thereby bind the court through collateral estoppel." (citation omitted). The second purpose of the intertwining doctrine was efficiency, i.e., to avoid "bifurcated proceedings and perhaps redundant efforts to litigate the same factual questions twice."

However, in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the United States Supreme Court put the doctrine to rest in cases where parties have agreed to arbitrate all claims except for federal securities claims. The Supreme Court considered the decisions of some Courts of Appeals which held that district courts should decide arbitrable pendent claims when non-arbitrable federal claims are before them,[13] and the holdings of

some other Courts of Appeals that arbitration should be stayed pending the outcome of the federal litigation.[14] The Supreme Court rejected both these approaches, as well as the legal reasoning offered in support of these holdings. Relative to the issue of "preclusion" which troubled many of the courts, the Supreme Court stated:

> Initially, it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims. Just last Term, we held that neither the full-faith-and-credit provision of 28 U.S.C. § 1738, nor a judicially fashioned rule of preclusion, permits a federal court to accord res judicata or collateral-estoppel effect to an unappealed arbitration award in a case brought under 42 U.S.C. § 1983. *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). The full-faith-and-credit statute requires that federal courts give the same preclusive effect to a State's *judicial proceedings* as would the courts of the State rendering the judgment, and since arbitration is not a judicial proceeding, we held that the statute does not apply to arbitration awards.... We therefore recognized that arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings.

*Dean Witter Reynolds, Inc. v. Byrd, supra,* 470 U.S. at page 222, 105 S.Ct. at page 1243.

Then, the Supreme Court disposed of the efficiency argument with these observations:

> The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Re-

---

**13.** See *Miley v. Oppenheimer & Co.,* 637 F.2d 318 (5th Cir.1981); *Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 693 F.2d 1023 (11th Cir. 1982).

**14.** See *Surman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 733 F.2d 59, 62–63 (8th Cir.1984); *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 644 (7th Cir.1981).

port accompanying the Act makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.

*Id.* at page 219, 105 S.Ct. at page 1242.

Accordingly, in *Dean Witter Reynolds, Inc. v. Byrd, supra,* the Supreme Court reversed the Ninth Circuit Court of Appeals insofar as it upheld the district court's decision to deny the motion to compel arbitration of the pendent state claims. The Court concluded that compelling arbitration of state-law claims, even if it results in "piecemeal" litigation, best protects the contractual rights of the parties.

So, inasmuch as under the Federal Arbitration Act this court is empowered to compel arbitration of arbitrable issues even where there are intertwined claims which will be litigated in the courts, this court hereby directs the parties to proceed to arbitration with all the plaintiff's claims, except those which are predicated upon violations of the federal securities laws. *Hartford Lloyd's Insurance Company v. Teachworth,* 898 F.2d 1058, 1061 (5th Cir.1990).

### III.

*The Motion of John R. Murphy, III, for Summary Judgment*

According to the defendant, John R. Murphy, the plaintiff brings this lawsuit for no other reason than to harass, embarrass, and damage this defendant's professional reputation. Moreover, says John R. Murphy, the plaintiff seeks either to recover or exact revenge upon a debt which has been discharged in bankruptcy.

The court has reviewed the plaintiff's complaint and finds the assertions therein include conspiracy to defraud, breach of the duty of good faith and fair dealing, and false representations. The discharge of John R. Murphy's debts in Bankruptcy Case No. 8701454 was entered under Chapter 7, specifically under 11 U.S.C. § 727, which provides in pertinent part:

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of this order for relief under this chapter.

. . . . .

Title 11 U.S.C. § 523 addresses exceptions to discharge under 11 U.S.C. § 727 and provides in pertinent part as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's . . . financial condition;

(iii) on which the creditor to whom the debtor is liable for such money . . . or credit reasonably relied; and

(iv) that the debtor caused to be made or published with to deceive;

So, inasmuch as the plaintiff has asserted claims based upon those exceptions to discharge listed at 11 U.S.C. § 523, the motion for summary judgment of John R. Murphy must be denied. The parties shall submit a scheduling order as previously directed by the court. This case is hereby set for trial on the calendar of this court beginning in May of 1993.

SO ORDERED AND ADJUDGED.