**Casey CLAUSEN, Plaintiff,**

v.

**WATLOW ELECTRIC MANUFACTURING CO., Defendant.**

**No. CV 02–1146–BR.**

United States District Court, D. Oregon.

Nov. 26, 2002.

Daniel L. Keppler, Kennedy, Watts, Arellano & Ricks LLP, Portland, for Plaintiff.

Caroline R. Guest, Davis Wright Tremaine LLP, Portland, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss and Compel Arbitration (# 5). For the following reasons, the Court **DENIES** Defendant's Motion.

## *FACTUAL BACKGROUND*

The following facts are undisputed unless otherwise noted:

Defendant is a St. Louis, Missouri, company engaged in the business of producing components used in high-tech manufacturing. On May 8, 1995, Defendant hired Plaintiff to act as its sales representative. The parties entered into a written Sales Representation Agreement, which provided the parties

> acknowledge and agree that ... [Plaintiff] is an independent contractor of ... [Defendant] and that this Agreement does not establish any employment, partnership or other relationship between the parties.... [Plaintiff] is not entitled to any pension, welfare or any other benefits available to employees of ... [Defendant].

(Bohnenkamp Decl. Ex. 1 at 5.)

Defendant asserts it "encouraged" Plaintiff and its other sales representatives in 1997 to form their own business entities to contract with Defendant in an effort to ensure "there was no confusion" regarding their status as independent contractors. Plaintiff, however, asserts Defendant required him to form a business entity as a condition of his ongoing business relationship with Defendant. On November 7, 1997, Plaintiff incorporated his own company, Datatronix, Inc.

On January 1, 1998, Datatronix entered into an Agency Agreement with Defendant. Plaintiff signed the contract on behalf of Datatronix. Datatronix and Defendant entered into subsequent Agency Agreements on August 1, 1999, and January 1, 2001. Defendant drafted each of these agreements.

## *Terms of the Agreement*

Pursuant to the January 1, 2001, Agency Agreement (Agreement), Datatronix agrees to act as Defendant's nonexclusive agent to solicit orders from customers for the purchase of Defendant's products and to perform certain enumerated services for Defendant. Pursuant to section 9 of the Agreement, Datatronix and Watlow expressly acknowledge and agree that Datatronix is an independent contractor. Section 9 further provides:

> [Datatronix] ... shall employ, upon its own responsibility and at its own risk, such persons as may be necessary or convenient for the efficient performance of its duties and obligations under this Agreement, it being understood and agreed that all such persons shall be agents and employees of and under the sole supervision, direction and control of ... [Datatronix], that neither [Datatronix] ... nor any employee or agent of [Datatronix] ... shall be deemed in any way, directly or indirectly, expressly or by implication, to be an employee of Watlow, and that Watlow shall not in any way be liable for their acts, omissions, and conduct. [Datatronix] ..., as an independent contractor, shall not be entitled to any pension, welfare or other form of employee benefits available to the employees of Watlow.

(Penning Decl. Ex. A at 6.)

The Agreement also contains an arbitration provision under the heading "Miscellaneous." Section 17(f) provides:

> In the event of any dispute arising under this Agreement or the relationship of the parties, generally, same shall be submitted to binding arbitration in the manner hereinafter described in Section

17 [*sic* ], except with respect to matters which require a restraining order and/or injunction to prevent continuing or threatened violations of this Agreement, irreparable harm or enforcement of arbitration requirements or an arbitrator's award.

(Penning Decl. Ex. A at 9.) The Agreement further provides such provisional remedies should be sought in court.

Section 18 of the Agreement is the arbitration clause incorrectly referenced in section 17(f) as "Section 17." The arbitration clause provides:

> Arbitration with respect to the determination of any matter relating to the interpretation of this Agreement, the applicability of any provision of this Agreement or any other dispute related to or arising out of the Agreement shall be accomplished by a single arbitrator selected by [Defendant] and [Datatronix] in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

(Penning Decl. Ex. A at 9.) The Agreement also provides such arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.* Arbitration under the Agreement shall be "final and binding as to any matters submitted to arbitration."

Plaintiff signed the Agreement both in his individual capacity and on behalf of Datatronix as its President. Directly above his signature line, the Agreement provided Plaintiff entered into the Agreement in his individual capacity "for the sole purpose of agreeing to the provisions of Sections 14, 15 and 16 hereof." Sections 14, 15, and 16 of the Agreement address, respectively, issues of confidentiality, non-competition, and inventions. None of these sections discusses arbitration or directly references the arbitration provisions in sections 17(f) and 18 of the Agreement.

### The Dispute

On June 4, 2002, Defendant received a letter from Plaintiff's counsel in which he asserted numerous allegations on behalf of Plaintiff. In particular, Plaintiff's counsel argued Defendant wrongfully discharged Plaintiff and failed to pay commissions owed to him.

On June 28, 2002, Defendant submitted a Demand for Arbitration to the American Arbitration Association. Defendant named the Respondent as "Datatronix, Inc., Casey Clausen, President." Defendant requested

> its contracts with Respondent be enforced in accordance with their terms and that (1) Respondent be declared an independent contractor and not an employee of ... [Defendant] and (2) [Defendant] ... be declared not to have breached the parties' contracts in any respects.

(Penning Decl. Ex. C at 2.)

On July 11, 2002, Plaintiff filed his Complaint against Defendant in Multnomah County Circuit Court. Plaintiff alleges he was employed by Defendant as a sales representative and technical support services provider to Defendant's customers in Oregon. Plaintiff alleges Defendant provided Plaintiff with equipment, software, and access to Defendant's network and other information systems. Plaintiff further alleges he communicated with and reported his activities to Defendant on a daily basis, and Defendant controlled the manner in which Plaintiff performed his job functions.

According to Plaintiff, in August 2001, Defendant engaged in a scheme that Plaintiff believed violated trade regulation and antitrust laws. Plaintiff allegedly reported

the activity to Defendant's general counsel who agreed the scheme was unlawful. Plaintiff asserts he refused to participate in the scheme. In his Complaint, Plaintiff alleges Defendant retaliated against Plaintiff by reducing his commission rate in an attempt to force him to resign. Plaintiff alleges Defendant then sent a letter to Plaintiff that terminated his employment. At the same time, Defendant forced Plaintiff to submit a letter of resignation. Plaintiff further alleges Defendant failed to pay Plaintiff the full amount of sales commissions owed to him.

In Plaintiff's Complaint, he asserts claims against Defendant for wrongful discharge; unpaid wages and statutory penalties under Or.Rev.Stat. § 652.110, *et seq.;* breach of contract; breach of the duty of good faith and fair dealing; and intentional interference with economic relations. Plaintiff also seeks a declaration by the Court that the Agreement is unconscionable, against public policy, and unenforceable against Plaintiff. Plaintiff seeks unpaid commissions, loss of income and wages, loss of future income and wages, statutory penalties, attorneys' fees, costs, and interest.

The day after Plaintiff filed his Complaint in state court, Plaintiff and Datatronix submitted a joint Answering Statement to Defendant's Demand for Arbitration. Plaintiff and Datatronix objected to the arbitrability of the disputed issues and the jurisdiction of the American Arbitration Association. Plaintiff and Datatronix requested the Court stay the arbitration proceeding pending a final judgment in the state court action.

On August 23, 2002, Defendant removed Plaintiff's state court action to federal court on the ground that complete diversity of citizenship of the parties exists and the amount in controversy exceeds $75,000.

## STANDARDS

The FAA provides written agreements to arbitrate disputes that arise out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Pursuant to § 4 of the FAA,

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

\* \* \* \* \* \*

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.

If a court finds the issue involved in a federal action is referable to arbitration under a written arbitration agreement, the court

shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, provid-

ing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

## DISCUSSION

Pursuant to 9 U.S.C. § 4, Defendant moves the Court for an order compelling Plaintiff to submit his claims to mandatory binding arbitration in accordance with the terms of the Agreement. Defendant also moves the Court to dismiss Plaintiff's claims on the ground they are barred by the arbitration provisions of the Agreement.

Plaintiff argues the Court may not enforce the arbitration provisions of the Agreement and compel him to arbitrate because he personally never agreed to arbitrate his claims against Defendant. Plaintiff further contends the arbitration provisions are invalid and unenforceable.

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotations and citations omitted). Accordingly, when the court receives a request to compel arbitration of a dispute, the threshold inquiry is whether the parties entered into a valid and enforceable written agreement to arbitrate. *Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1048 (9th Cir.1996).

■ The FAA "creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 939 (9th Cir.2001), *cert. denied,* 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002) (internal quotations and citations omitted). The FAA, however, does not preempt state law regarding the " 'validity, revocability and enforceabil-

ity of contracts generally.' " *Id.* at 937 (quoting *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). Thus, to resolve the issue whether the parties entered into a valid and enforceable written agreement to arbitrate, the court must apply general, state-law principles of contract interpretation. *Id.* at 1049. The scope of the agreement, however, is a matter of federal substantive law. *Letizia v. Prudential Bache Secur., Inc.,* 802 F.2d 1185, 1187 (9th Cir.1986).

The undisputed facts establish Plaintiff signed the Agreement on behalf of his corporation, Datatronix, and thereby agreed to arbitrate Datatronix's claims against Defendant arising under or relating to the Agreement. Plaintiff also signed the Agreement on his own behalf. The Agreement, however, specifically provides Plaintiff, in his individual capacity, is a party only to certain portions of the Agreement, which do not include the arbitration provisions in sections 17 and 18.

Defendant apparently concedes Plaintiff did not bind himself to the arbitration provisions when he signed the Agreement in his individual capacity in light of the express limitation attached to his signature line. Defendant, nonetheless, contends the Court must compel Plaintiff to arbitrate his claims against Defendant for two reasons: 1) Plaintiff "has no personal claims to assert" according to the terms of the Agreement because his claims are, in fact, the claims of Datatronix, and 2) agency principles are sufficient to bind Plaintiff to the arbitration provisions.

Defendant argues the allegations in the Complaint show Plaintiff actually is attempting to assert claims that only Datatronix can assert, and the Agreement clearly provides Datatronix must submit its claims against Defendant to binding arbitration. Defendant argues the Court, therefore, must require Plaintiff to submit

his claims to arbitration. Defendant's argument misses the mark.

Plaintiff's claims are pled as individual claims: Plaintiff does not allege he is entitled to prevail because of his relationship with Datatronix, Plaintiff alleges a direct relationship between himself and Defendant, and Datatronix is not a party to this action. Defendant acknowledges Plaintiff did not sign the arbitration provisions in his personal capacity. Whether Plaintiff can withstand a motion to dismiss for failure to state a claim or ultimately prevail on his claims is irrelevant to the issue whether Plaintiff entered into a written agreement to arbitrate any individual claims against Defendant. *See AT & T,* 475 U.S. at 649, 106 S.Ct. 1415 (when considering whether a dispute is arbitrable, the court must take great care to avoid ruling on the merits of the underlying dispute).

■ Defendant, nevertheless, argues Plaintiff is bound by the arbitration provisions as a nonsignatory because Plaintiff was the sole representative and agent of Datatronix at the time the parties entered into the Agreement. Defendant relies on *Letizia v. Prudential Bache Secur., Inc.,* 802 F.2d 1185 (9th Cir.1986), to support its argument. In *Letizia,* the defendant brokerage firm forced the plaintiff to sign the firm's standard Customer Agreement when the plaintiff opened a securities account with the firm. *Id.* at 1186. The Customer Agreement provided for arbitration of any dispute arising out of or relating to the plaintiff's securities account. *Id.* The plaintiff later filed an action in which he alleged his account executive and the account executive's supervisor churned the plaintiff's account and traded securities without regard to his investment objectives. *Id.* The plaintiff named the brokerage firm, the plaintiff's account executive, and the account executive's supervisor as defendants. *Id.* The defendants moved

the court to compel arbitration. The plaintiff argued the individual defendants could not compel him to arbitrate his claims against them because they were not signatories to the Customer Agreement. *Id.*

Although the case presented a question of first impression in the Ninth Circuit, the court noted several other circuits have held "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* at 1187. In particular, the Second Circuit has recognized five theories under which nonsignatories may be bound: 1) incorporation by reference, 2) assumption, 3) agency, 4) veil piercing/alter ego, and 5) estoppel. *See Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995).

■ Under traditional agency principles, however, an agent of a disclosed principal does not become a party to the contract and is not bound by the contract even if the agent is the person or entity that negotiates and signs the contract on behalf of the principal. *See Bel–Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 445 (3d Cir.1999). *See also* Rest. (Second) of Agency § 320 ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."). Accordingly, Plaintiff is not bound to the terms of Datatronix's agreement to arbitrate merely by the fact that Plaintiff signed the Agreement, including the arbitration provisions, on behalf of Datatronix as its agent.

Nonetheless, the Ninth Circuit held in *Letizia* that a nonsignatory agent still may be bound to the terms of an arbitration agreement under certain circumstances. Adhering to the "majority view," the court held the nonsignatory employees of the brokerage firm could enforce the arbitra-

tion provision because the plaintiff's claims against them "related to" their handling of the plaintiff's securities account with the firm and the firm "clearly indicated its intention to protect its employees through its Customer Agreement." *Id.* The Ninth Circuit, therefore, based its holding in *Letizia* on an interpretation of the scope of the arbitration agreement rather than an agency theory. *See Bel–Ray Co.*, 181 F.3d at 444 (court explained the difference between cases like *Letizia* that are based on the construction of the arbitration clause at issue and cases that are based on an agency theory). The Ninth Circuit found the arbitration agreement at issue broad enough to include the plaintiff's claims against the employees of the brokerage firm for actions taken within the course and scope of their employment.

Defendant acknowledges *Letizia* is not directly on point because the factual situation here is reversed. In *Letizia*, the parties who wanted to take advantage of the arbitration agreement were nonsignatories, and the party who was compelled to arbitrate his claims was a signatory. Here the party who wants to take advantage of the arbitration agreement is a signatory and the drafter of the agreement, and the party who would be compelled to arbitrate his claims did not sign the arbitration agreement in his personal capacity. Defendant, nonetheless, argues "the legal principle is still applicable."

The legal principle in *Letizia*, however, involved the court's interpretation of the scope of the arbitration agreement at hand. The Agreement between Defendant and Datatronix, unlike the Consumer Agreement in *Letizia*, does not "clearly indicate" Datatronix intended the scope of the arbitration provisions to encompass Plaintiff's individual claims. Although the arbitration provision in section 17 requires "the parties" to arbitrate "any dispute arising under this Agreement or the rela-

tionship of the parties, generally," section 18 is more limited in scope. Section 18 provides Defendant and Datatronix shall choose an arbitrator to determine "any matter relating to the interpretation of this Agreement, the applicability of any provisions of this Agreement or any other dispute related to or arising out of the Agreement." Section 18 does not refer in general terms to the parties or their relationships but specifically refers to the Agreement and to Datatronix and Defendant. Thus, the scope of the agreement to arbitrate is inherently ambiguous in light of the two separate arbitration provisions. More importantly, the fact that Plaintiff signed in his individual capacity only certain provisions of the Agreement that did not include those sections relating to arbitration could indicate Datatronix actually intended to exclude Datatronix's agents, namely Plaintiff, from the arbitration provisions in the Agreement. Viewing the Agreement on its face, the Court finds it does not unambiguously manifest the parties' intent to include Plaintiff's individual claims against Defendant within the scope of the arbitration provisions. The Court, therefore, cannot determine as a matter of law that Defendant is entitled to an order compelling Plaintiff to submit his claims to arbitration.

In its original Motion, Defendant disregarded the corporate form and merely "assumed" Plaintiff and Datatronix are "one and the same" for purposes of the arbitration provisions. Defendant did not raise the *Letizia* issue until its Reply Memorandum. Plaintiff, therefore, had no opportunity to respond to this argument or to provide evidence of the parties' intent. As a result, the factual record is inadequate. Based on the current record, the Court finds Defendant has not provided sufficient evidence for the Court to conclude the parties intended the ambiguous arbitration provisions to apply to Plaintiff's individual

claims against Defendant. Accordingly, the Court cannot compel Plaintiff to arbitrate his personal claims and cannot dismiss Plaintiff's claims on the ground that they are barred by the arbitration provisions.

### CONCLUSION

For the above reasons, the Court **DENIES** Defendant's Motion to Dismiss and Compel Arbitration (# 5).

IT IS SO ORDERED.